# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| Diamond State Insurance Company, ) | |
| ) | Civil Action No.: 1:11-cv-02528-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Estate of Ryan Tyler McNeal, ) | |
| Gary McNeal and Suzanne ) | |
| McNeal, and Ronnie Craven ) | |
| d/b/a Craven's Auto Sales, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on Plaintiff Diamond State Insurance Company's ("Diamond State") Motion for Summary Judgment [Dkt. No. 28] seeking a declaration as to the amount of coverage provided under an insurance policy issued by Diamond State.[1] For the reason outlined below, the court grants in part and denies in part Diamond State's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The case arises out of an automobile accident that occurred on January 2, 2011, leading to the deaths of Ryan J. Craven and Ryan T. McNeal. In an underlying state court action filed by the Estate of Ryan T. McNeal and Ryan T. McNeal's parents, Gary and Suzanne McNeal (collectively, the "McNeal Estate"), the McNeal Estate alleges that Ryan J. Craven negligently operated a vehicle that was negligently entrusted to him by Ronnie Craven d/b/a Craven's Auto

---

[1] Defendants did not file a cross-motion for summary judgment seeking a declaratory judgment in their favor. However, the parties submitted a Joint Status Report [Dkt No. 37] on December 3, 2012, explaining the posture of the case and indicating that the summary judgment filings were sufficient for the court to make its declaratory judgment disposing of the case. Upon review of the record, the court agrees that the parties have adequately briefed the issues, and the declaratory judgment action is ripe for review.

1

Sales ("Ronnie Craven"), which resulted in this incident.  It is undisputed that Ryan J. Craven was the driver of the vehicle on the night of the accident.  It is further undisputed that the vehicle was owned by Ronnie Craven and was a covered auto pursuant to the Commercial Auto Garage Insurance Policy No. GAP 0000085 (the "Policy"), issued to Ronnie Craven.  Only the McNeal Estate's claims against the Policy are at issue in this case.

In the instant motion, Diamond State seeks a declaration that the available insurance proceeds are limited to Three Hundred Thousand ($300,000.00) Dollars; and, once paid, that the policy is exhausted and it has no further duty to defend its insured, Ronnie Craven.  The McNeal Estate and Ryan T. McNeal's parents, Gary and Suzanne McNeal, contend that the available policy limits are Six Hundred Seventy-Five Thousand ($675,000.00) Dollars.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *See id.* at 324.  Under this standard, the existence of a mere

2

scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

"Insurance policies are subject to the general rules of contract construction." *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 356 S.C. 156, 162, 588 S.E.2d 112, 115 (2003) (quoting *B.L.G. Enterprises, Inc. v. First Financial Ins. Co*., 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999)). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). "The Court must give policy language its plain, ordinary, and popular meaning. When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *Id*. Furthermore, "[a]mbiguity may not be created in an insurance policy by singling out a sentence or a clause ... [and] courts may not torture the ordinary meaning of language to extend coverage expressly excluded by the terms of a policy." *Laidlaw Envtl. Servs., Inc. v. Aetna Cas. & Sur. Co. of Ill.*, 338 S.C. 43, 48, 524 S.E.2d 847, 850 (Ct. App. 1999) (internal citations omitted). "'Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.'" *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) (quoting

*Diamond State Ins. Co. v. Homestead Indust., Inc*., 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995)).

The Policy contains language concerning two types of liability for which the Policy provides coverage which are at issue in this case: "Garage Operations" – Other than Covered "Autos" and "Garage Operations" – Covered "Autos."  The Policy defines these liabilities as follows:

> "Garage Operations" – Other than Covered "Autos"  We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".
>
> We have the right and duty to defend any "insured" against a "suit" asking for these damages . . . Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" – Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.

Diamond State Policy of Insurance, Section II, p. 2 of 17 [Dkt. No. 28-3, at 34].

> "Garage Operations" – Covered "Autos"  We will pay all sums "an insured" legally must pay as damage because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered autos. . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for these damages . . . Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" – Covered "Autos" has been exhausted by payment of judgments or settlements.

*Id*., at p. 3 of 17 [Dkt. No. 28-3, at 35].

Additionally, the Policy separately outlines the cumulative limits of the insurance coverage provided for "Garage Operations" – Other than Covered "Autos" and "Garage Operations" – Covered "Autos."  It states, in relevant part,

**Aggregate Limit Of Insurance – "Garage Operations" – Other Than Covered "Autos"**

4

> For "garage operations" other than the ownership, maintenance or use of covered "autos", the following applies:
>
> Regardless of the number of covered "autos", "insureds", claims made or "suits" brought or persons or organizations making claims or bringing "suits", the most we will pay for the sum of all damages involving "garage operations" other than "auto" is the Aggregate Limit of Insurance – "Garage Operations" – Other Than Covered "Autos" for Liability Coverage shown in the Declarations.
>
> Damages payable under the Aggregate Limit of Insurance – "Garage Operations" – Other Than Covered "Autos" consist of damages resulting from "garage operations", other than the ownership, maintenance or use of the "autos" indicated in Section I of this coverage form as covered "autos", . . .
>
> Damages payable under the Each "Accident" Limit of Insurance – "Garage Operations" – Other Than Covered "Autos" are not payable under the Each "Accident" Limit of Insurance – "Garage Operations" – Covered "Autos".
>
> Subject to the above, the most we will pay for all damages resulting from all "bodily injury" and "property damage" resulting from any one "accident" is the Each "Accident" Limit of Insurance – "Garage Operations" – Other Than Covered "Autos" for Liability Coverage shown in the Declarations.
>
> All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same condition will be considered as resulting from one "accident".

*Id.*, at p. 8 of 17 [Dkt. No. 28-3, at 40].

> **Limit Of Insurance – "Garage Operations" –Covered "Autos"**
>
> For "accidents" resulting from "garage operations" involving the ownership, maintenance or use of covered "autos", the following applies:
>
> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" involving a covered "auto" is the Each "Accident" Limit of Insurance – "Garage Operations" – Covered "Autos" for Liability Coverage shown in the Declarations.
>
> Damages . . . payable under the Each "Accident" Limit of Insurance –

5

> "Garage Operations" – Covered "Autos" are not payable under the Each "Accident" Limit of Insurance – "Garage Operations" – Other Than Covered "Autos".
>
> All "bodily injury" and "property damage" . . . resulting from continuous or repeated exposure to substantially the same condition will be considered as resulting from one "accident".
>
> No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and . . . any Underinsured Motorist Coverage endorsement attached to this Coverage Part.

*Id*.

> The Policy also defines "Accident" and "Garage Operations" as follows:
>
> "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

*Id*., at p. 15 of 17 [Dkt. No. 28-3, at 47].

> "Garage Operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this coverage form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

*Id*., at p. 16 of 17 [Dkt. No. 28-3, at 48].

The declarations page of the Policy indicates that 1) the Each "Accident" "Garage Operations" "Auto" Only liability limit is $300,000.00; 2) the Each "Accident" "Garage Operations" Other Than "Auto" Only liability limit is $300,000.00; and 3) the Aggregate – "Garage Operations" – Other Than "Auto" Only liability limit is $600,000.00. Commercial Auto Coverage Part Garage Coverage Form Declarations, p. 1 of 3 [Dkt. No. 28-3, at 4]. The policy also includes an underinsured motorist ("UIM") coverage endorsement with limits of $75,000.00.

6

Diamond State contends that the available coverage under the Policy is limited to that provided pursuant to the Each "Accident" "Garage Operations" "Auto" Only liability limit of $300,000.00 because Ryan T. McNeal's death resulted from one accident – the automobile accident that occurred on January 2, 2011.  Conversely, the McNeal Estate argues that the Policy at issue provides two separate and distinct aspects of coverage that became available to satisfy any judgment or settlement recovered by the McNeal Estate for Ryan T. McNeal's death resulting from Ronnie Craven's alleged negligent entrustment of the vehicle to Ryan Craven, and Ryan Craven's alleged negligent operation of the automobile.  The McNeal Estate asserts that the Policy provides independently available coverage under the Each "Accident" "Garage Operations" – "Auto" Only liability limit of $300,000.00, plus the coverage provided under the Each "Accident" "Garage Operations" – Other Than "Auto" Only liability limit of $300,000.00, in addition to the $75,000.00 UIM coverage provided by the Policy endorsement.

Upon review of the Policy, the court finds that it unambiguously provides for both "Garage Operations" – Covered "Auto" coverage and "Garage Operations" – Other Than Covered "Auto" coverage, which may be separately activated upon the occurrence of a qualifying "accident."   The Policy further defines "accident" as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"   Although Ronnie Craven's alleged negligent entrustment and Ryan Craven's alleged negligent driving may constitute separate events and/or independent proximate causes for Ryan T. McNeal's death, the only "bodily injury" or "property damage" that occurred in this case was the single accident on January 2, 2011.  Furthermore, the Policy includes anti-stacking language providing that damages payable under one coverage provision are not payable under the other.  Accordingly,

7

coverage is available under either liability sections of the Policy for "Garage Operations" – Covered "Auto" or "Garage Operations" – Other Than Covered "Auto" but not both.

Additionally, the court finds that the Policy does not provide for UIM coverage where the Policy liability limits are applicable. The UIM endorsement provides:

> No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form, Medical Payments Coverage Endorsement, or Uninsured Motorist Coverage Endorsement attached to this Coverage Form.
>
> We will not make a duplicate payment under the Coverage Form for any element of "loss" for which payment has been made by or for anyone who is legally responsible.
>
> We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of loss under any workers' compensation, disability benefits, or similar law.

Diamond State Policy of Insurance, Underinsurance Endorsement, p. 3 of 4 [Dkt. No. 28-3, at 58]. Under South Carolina law, an insured may be contractually prohibited from claiming UIM policy benefits by valid policy provision. *See Mangum v. Maryland Cas. Co.*, 330 S.C. 573, 500 S.E.2d 125 (Ct. App. 1998). The UIM endorsement of the Policy plainly limits duplicate payments for losses covered by other liability coverage. Therefore, the Policy does not provide UIM coverage in this case.

Finally, as to Diamond State's obligations under the Policy to defend its insured, Ronnie Craven, South Carolina law clearly provides that the "tender of its policy limits [does] not relieve [an insurer] of the obligation to defend its insured." *Nationwide Mut. Ins. Co. v. Simmonds*, 315 S.C. 404, 407, 434 S.E.2d 277, 278 (1993). Additionally, the Policy states that the duty to defend continues until the payment of a settlement or judgment. It is undisputed that there has been no payment of a settlement or a judgment. Consequently, Diamond State remains under a contractual obligation to defend its insured.

8

## CONCLUSION

For the foregoing reason, the court **GRANTS IN PART AND DENIES IN PART** Plaintiff Diamond State Insurance Company's Motion for Summary Judgment [Dkt. No. 28]. The court finds the Policy at issue provides available coverage limits of $300,000.00. Additionally, the court finds that Diamond State Insurance Company has a continuing duty to defend Ronnie Craven d/b/a Craven's Auto Sales.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 11, 2013
Aiken, South Carolina